IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CV-362-FL

| | | |
|---|---|---|
| DORA SIMMONS GHAZALY, on behalf of herself and all others similarly situated, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | ORDER |
| FIRST NATIONAL COLLECTION BUREAU, INC., a Nevada Corporation, | )<br>)<br>) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion to remand pursuant to Federal Rule of Civil Procedure 12(h)(3). (DE 15). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, plaintiff's motion is granted.

## STATEMENT OF THE CASE

Plaintiff brought this putative class action July 30, 2021, in superior court in Cumberland County, North Carolina claiming defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50 et seq., and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1. The putative class consists of consumers in North Carolina whose debt information defendant sent to a third party without prior consent. Plaintiff seeks compensatory and punitive damages, costs, interest, and attorneys' fees.

Defendant removed the action to this court September 9, 2021, pursuant to 28 U.S.C. § 1331 and arising out of plaintiff's FDCPA claim. Defendant subsequently answered plaintiff's complaint, and the court entered a scheduling order.

Plaintiff filed the instant motion March 7, 2022, asserting that the facts alleged in her complaint fail to establish Article III standing, and thus remand to Cumberland County is proper. Defendant responded in opposition, and plaintiff replied.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint may be summarized as follows. Defendant is engaged in the business of collecting debt owed to creditors. (Compl. (DE 1-3) ¶ 10). Plaintiff owes $594.75 to First Premier Bank, and that debt was in default. (Id. ¶¶ 13, 18, 25). At a date uncertain, First Premier Bank "transferred" plaintiff's debt to defendant. (Id. ¶ 17).

In an effort to collect the debt, defendant engaged a third-party vendor to prepare and send plaintiff letters. (Id. ¶¶ 20, 24). Defendant sent information about plaintiff to that third-party vendor, who then "populated" the debt information "into a prewritten template," printed the resulting letters, and mailed them to plaintiff. (Id. ¶¶ 21, 24).

Plaintiff received and read two such letters August 25, 2020, and April 8, 2021. (Id. ¶ 25). Plaintiff did not consent to defendant's disclosure of her debt information to the third-party vendor. (Id. ¶ 50).

## COURT'S DISCUSSION

A.      Standard of Review

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "[I]t is the defendant who carries the burden of alleging in his notice of removal and, if

challenged, demonstrating the court's jurisdiction over the matter." Strawn v. AT & T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008). "[R]emoval statutes must be construed narrowly, and any doubt about the propriety of removal should be resolved in favor of remanding the case to state court." Barbour v. Int'l Union, 640 F.3d 599, 615 (4th Cir. 2011); see also Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008) (recognizing the court's "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand").

B. Analysis

Plaintiff asserts defendant failed to demonstrate Article III standing on the basis of plaintiff's complaint. The court agrees.

Federal courts are limited by Article III of the United States Constitution to deciding actual "cases" or "controversies." U.S. Const. art. III § 2. If a plaintiff lacks standing, then there is no case or controversy, and the court lacks subject-matter jurisdiction over their claims. Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."). In a case that has been removed to this court, where the court lacks Article III jurisdiction, the proper remedy is to remand the case to state court. Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 78 n.4 (1991)

To have standing to sue, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. Facts demonstrating each element must be clearly alleged. Id.; see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) ("[a]t the pleading stage," the court analyzes factual allegations regarding injury under the standard for a motion to dismiss).

To establish the first element, injury in fact, plaintiff's allegations must be sufficient to show she suffered a concrete harm. TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021).

3

"[C]ertain harms readily qualify as concrete injuries under Article III," the most obvious of which are "traditional tangible harms, such as physical harms and monetary harms." Id. "If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." Id. Intangible harms can also be concrete, however. See id. In making such determination, courts consider whether the intangible harms bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." Id. "Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." Id. This inquiry "does not require an exact duplicate in American history and tradition." Id. However, it is also "not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." Id.

In the instant case, plaintiff claims only a violation of a statute, but not any concrete injury. She asserts in the complaint that defendant violated the FDCPA by sharing her information with a third-party mailing vendor in connection with the collection of a debt. (Compl. (DE 1-3) ¶¶ 37-58). Specifically, she claims that by sharing her information with the mailing vendor, defendant violated 15 U.S.C. § 1692c(b), which prohibits debt collectors from communicating "with any person other than the consumer" regarding the collection of a debt. (Id. ¶¶ 43-50). She claims defendant additionally violated 15 U.S.C. § 1692f by using "unfair or unconscionable means to collect or attempt to collect a debt." (Id. ¶¶ 51-56).

Though Congress's view on harm is "instructive," "an injury in law is not an injury in fact." TransUnion, 141 S. Ct. at 2204-05. Thus, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Spokeo, 578 U.S. at 341. "Only those plaintiffs who

4

have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." TransUnion, 141 S. Ct. at 2205 ("Article III standing requires a concrete injury even in the context of a statutory violation."). Thus, assuming without deciding that defendant violated the FDCPA by sharing plaintiff's loan information with a third-party vendor, plaintiff must still have additionally alleged concrete harm.

On review of plaintiff's complaint, it is clear she has not. As an initial matter, plaintiff fails to make specific allegations of injury from the alleged disclosure at issue. See Spokeo, 578 U.S. at 338 (requiring that the complaint "clearly" allege facts demonstrating each element of Article III standing). Plaintiff alleges defendant "uses a third party without regard to the propriety and privacy of the information it discloses to such third party," and vaguely refers to "the harm to [p]laintiff[] . . . that could result from [d]efendant's unauthorized disclosure of private and sensitive information to the third party." (Compl. (DE 1-3) ¶¶ 53-54) (emphasis added). She additionally alleges, again without specificity, "[t]he unauthorized disclosure of a consumer's private and sensitive information is both unfair and unconscionable." (Id. ¶ 56). Finally, she broadly seeks compensatory damages, as well as pecuniary damages in relation to her state law claim, without providing any actual basis for such harm. (Id. ¶ 72, Prayer for Relief ¶ 6). These bare allegations of speculative injury do not demonstrate concrete harm. See Spokeo, 578 U.S. at 340 ("A 'concrete' injury must be 'de facto'; that is, it must actually exist. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'").

The harms alleged additionally lack a "close relationship" to the harms caused by traditional torts. TransUnion, 141 S. Ct. at 2208-10 (distinguishing between class members with the same cause of action when analyzing standing because of different evidence of harm). Here, as asserted by defendant, the best traditional tort comparator is invasion of privacy. "Traditionally,

5

invasion of privacy encompassed four theories: intrusion upon seclusion, appropriation of a person's name or likeness, publicity given to private life, and publicity placing a person in a false light." Persinger v. Sw. Credit Sys., L.P., 20 F.4th 1184, 1191-92 (7th Cir. 2021); see Renwick v. News and Observer and Renwick v. Greensboro News, 310 N.C. 312, 322 (1984); Restatement (Second) of Torts §§ 652A–652E (1977)); see also TransUnion LLC, 141 S. Ct. at 2204 (providing harms traditionally recognized as providing a basis for lawsuits include "intrusion upon seclusion" and "disclosure of private information").  Of those, intrusion upon seclusion and publicity given to private life most closely resemble the alleged harms in the instant case.

Publicity given to private life occurs when a person gives "publicity" to private facts that would be highly offensive to a reasonable person and are not of legitimate concern to the public. Restatement (Second) of Torts § 652D (1997).  To give "publicity" to a fact means to do more than share it with one other person. Id. cmt. a.  The communication must be "to the public at large," or to enough people that the information is substantially certain to become public knowledge. Id.  Here, plaintiff's alleged injury was not communication to the public at large, but rather communication that was made to a third-party for the exclusive purpose of providing clerical services.  Such disclosure is not certain, nor even likely, to reach the public. Cf. TransUnion, 141 S. Ct. at 2210 n.6. ("Many American courts did not traditionally recognize . . . . disclosures to printing vendors as actionable publications.").

As for intrusion upon seclusion, such tort provides remedy for "an intentional interference with [one's] interest in solitude or seclusion, either as to [one's] person or as to [one's] private affairs or concerns, of a kind that would be highly offensive to a reasonable [person]." Restatement (Second) of Torts § 652B (1997).  It includes "physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent

6

Case 5:21-cv-00362-FL   Document 19   Filed 07/08/22   Page 6 of 9

telephoning, unauthorized prying into a bank account, and opening personal mail of another." Tillet v. Onslow Mem'l Hosp., Inc., 215 N.C. App. 382, 384 (2011) (listing examples of conduct that gives rise to an intrusion upon seclusion action); see also Restatement (Second) of Torts § 652B cmt. b (same). The de minimis intrusion here, a third-party populating plaintiff's debt information and sending two written letters, cannot be said to be "offensive," highly or otherwise. Thus, the harm alleged is not merely different in degree from that caused by an intrusion upon seclusion, but different in kind.

Defendant, bearing the burden of establishing standing on removal, has thus failed to establish standing on the facts alleged in plaintiff's complaint. See Strawn, 530 F.3d at 296. Its arguments to the contrary are unavailing. Defendant first points to the plaintiff's allegations of pecuniary injuries and compensatory damages. Though "monetary harms readily qualify as concrete injuries under Article III," as already noted, plaintiff fails to plead the factual underpinning of such harms with any specificity. TransUnion, 141 S. Ct. at 2197. Standing cannot be manufactured with conclusory allegations of injury in fact. See Spokeo, 578 U.S. at 338.

Defendant additionally relies upon opinions from the United States Court of Appeals for the Second, Seventh, and Tenth Circuit, all of which either support the court's analysis or are readily distinguishable. In Maddox v. Bank of New York Mellon Tr. Co., N.A., plaintiffs filed suit based on defendant's failure to timely file satisfaction of their mortgage. 19 F.4th 58, 65 (2d Cir. 2021). The court held plaintiffs lacked standing as they did not plead the harms possibly resulting from delayed recordation actually materialized. Id. ("True, the Maddoxes may have suffered a nebulous risk of future harm during the period of delayed recordation[,] . . . but that risk, which was not alleged to have materialized, cannot not form the basis of Article III standing.").

Thus, as here, the court found plaintiffs failed to demonstrate concrete injury with their "nebulous" claims of harm. Id.

The remaining two cases concerned harms distinguishable from those alleged in this case. In both Lupia v. Medicredit, Inc., 8 F.4th 1184 (10th Cir. 2021) and Persinger v. Sw. Credit Sys., L.P., 20 F.4th 1184, 1192 (7th Cir. 2021), the courts analogized the harm alleged to the traditional tort of intrusion upon seclusion. In Lupia, a debt collector sent a letter to the plaintiff and followed up with a phone call and voice message requesting payment. 8 F.4th at 1188. In response, plaintiff mailed written notice disputing the debt and requesting that the debt collector cease telephone communications. Id. The collector subsequently called for a second time and again left a voicemail. Id. The court found standing on the basis of that second phone call, reasoning the plaintiff suffered an injury comparable to harm resulting from intrusion when the debt collector called "despite [the plaintiff] having sent written notice disputing the debt and requesting that it cease telephone communications." Id. at 1191. Here, there is no phone call, nor such notice alleged.

In Persinger, the court found concrete harm where the defendant ordered a "propensity-to-pay score," from a consumer credit reporting agency without the plaintiff's permission. 20 F.4th at 1192. Such score is "distilled from a consumer's financial history," and the court thus analogized defendant's acquirement of it with "inspection of one's mail, wallet, or bank account," harms traditionally remedied by the tort of intrusion upon seclusion. Id. By comparison, plaintiff here does not allege that defendant improperly obtained or otherwise "inspect[ed]" her information. Id.[1]

---

[1] Although the Fourth Circuit has not addressed this issue directly, the United States District Court for the Middle District of North Carolina recently remanded cases to state court on the basis of a substantially similar analysis. See, e.g., Brown v. Alltran Fin., LP, No. 1:21-CV-595, 2022 WL 377001 (M.D.N.C. Feb. 8, 2022); Asbury v. Credit Corp Sols., Inc., No. 1:21-CV-650, 2022 WL 377011 (M.D.N.C. Feb. 8, 2022). Indeed, many district courts

8

Case 5:21-cv-00362-FL   Document 19   Filed 07/08/22   Page 8 of 9

Defendant additionally asserts "that it should be allowed to conduct discovery as to [p]laintiff's claim of damages and address standing further at the summary judgment phase." (Def. Mem. (DE 17) at 6). Where the court has determined it lacks jurisdiction, it is not within its discretion to allow further discovery. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." (emphasis added)).

In sum, since defendant is unable to identify pleaded facts showing plaintiff suffered a concrete injury, defendant has not demonstrated Article III standing sufficient to establish subject matter jurisdiction over plaintiff's claims. Therefore, the case must be remanded.

## CONCLUSION

Based on the foregoing, plaintiff's motion to remand is GRANTED. (DE 15). This case is REMANDED to the General Court of Justice, Superior Court Division, Cumberland County, North Carolina, for further proceedings. The clerk is DIRECTED to transmit a certified copy of this order to the clerk of the General Court of Justice, Superior Court Division, Cumberland County, North Carolina, and to file in this case a copy of the clerk's transmittal letter with certified copy of the instant order.

SO ORDERED, this the 8th day of July, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge

---

have found a failure to establish concrete injury on similar facts. See, e.g., Barclift v. Keystone Credit Servs., LLC, No. 5:21-CV-04335, ––– F.Supp. 3d –––, 2022 WL 444267, at *8 (E.D. Pa. Feb. 14, 2022); Cavazzini v. MRS Assocs., No. 21-CV-5087, ––– F.Supp. 3d –––, 2021 WL 5770273, at *6 (E.D.N.Y. Dec. 6, 2021); Nabozny v. Optio Sols., LLC, No. 21-CV-297-JDP, ––– F.Supp. 3d –––, 2022 WL 293092, at *4 (W.D. Wis. Feb. 1, 2022).